### 3892. BROADWATER *v.* THE STATE.

1. It is not necessary in an indictment for perjury to set out, either literally or in substance, the form of the oath alleged to have been administered to the defendant as a witness in the judicial investigation in which the perjury is alleged to have been committed. The jury can plainly understand this ingredient of the offense if it is alleged in the indictment that the oath administered to the defendant was a lawful oath, and if the time, place, and nature of the investigation, and the authority of the tribunal in which the perjury is alleged to have been committed, are so distinctly stated as to exclude every other inference than that the oath administered was in substance that prescribed by law, and that it was consciously taken by the accused when he testified as a witness. Generally, the form of oath administered to a witness is immaterial; and that it was a lawful oath may sufficiently appear without setting out the oath in full.

2. An act of the General Assembly conferring power upon municipal authorities to try all violators of ordinances of the municipality, and to sentence those adjudged to be guilty, and to fine them, imprison them, or compel them to work in a chain-gang upon the public streets, creates, by charter, a court. "Every court has power . . to administer oaths in an action or proceeding pending therein, and in all other cases, when it may be necessary, in the exercise of its powers and duties." Civil Code (1910), § 4644 (5).

3. In a trial before a municipal court composed of a board of commissioners any member of the board may administer an oath to a witness.

4. Proof that an ordinance was passed by the town council of a municipal corporation will support an allegation that it was passed by the general council of the corporation. In view of the fact that the charter of Kingston provides for only one municipal body, the variance between the term "town council," as used in the charter, and the term "general council," as used in the presentment, in reference to this municipal body, is not material.

5. It is essential that the materiality of the testimony alleged to. have been false should be made to appear in the indictment; and a day certain upon which the alleged perjury was committed must be stated. In the case at bar the allegations of the indictment sufficiently conform to these requirements.

6. There was no error in overruling the demurrer.

DECIDED JANUARY 30, 1912.

Indictment for perjury; from Bartow superior court—Judge Fite. November 17, 1911.

*M. B: Eubanks,* for plaintiff in error.

*T. C. Milner, solicitor-general,* by *George W. Stevens,* contra.

RUSSELL, J. Exception is taken to a judgment overruling a demurrer to a presentment for the offense of perjury. Without insisting too strongly upon the maxim that "Demurrer, being a critic, must itself be free from imperfections" (*Douglas, Augusta & Gulf Ry. Co.* v. *Swindle,* 2 *Ga. App.* 550, 556, 59 S. E. 600), which in the present case might be applied to at least one of the grounds of the special demurrer, we have fully considered each of the objections sought to be presented.

1. It is insisted, in the first place, that the alleged lawful oath is not set out in the body of the indictment, and that the facts alleged do not show that the oath was a lawful oath, or that the defendant was sworn as a witness in any case. It is plain, from the allegations of the indictment, that the board of commissioners of the Town of Kingston were sitting, as such, to try one Charles Davenport for a violation of ordinance No. 39, which is quoted in the presentment. This is a sufficient statement of the case. It is as ample as if the case had been described as the case of the board of commissioners of the Town of Kingston against Charles Davenport, or the town council of Kingston against Charles Davenport, charged with a violation of ordinance No. 39. It is not seriously insisted that it is necessary to set out in totidem verbis the oath actually administered upon the trial. Of course, it is necessary that it should be properly alleged that the oath administered to the witness Broadwater on the trial of Davenport was a lawful oath, and it may be that this statement, without more, in the indictment could be treated as a mere conclusion of the pleader, though we are inclined to doubt this. But certain it is that the allegations in reference to the administration of the oath and the proceeding in which it was administered set forth sufficient facts to enable the

jury and the defendant to understand that the accused, in the investigation referred to, obligated himself to speak truly in regard to the material matter in relation to which he is alleged to have testified knowingly, wilfully, and absolutely falsely. It is not necessary, in an indictment for perjury, to set out, either literally or in substance, the form of the oath alleged to have been administered to the defendant as a witness in the judicial investigation in which the perjury is alleged to have been committed. The jury can plainly understand this ingredient of the offense if it is alleged in the indictment that the oath administered to the defendant was a lawful oath, and if the time, place, and nature of the investigation, and the authority of the tribunal in which the perjury is alleged to have been committed are so distinctly stated as to exclude every other inference than that the oath in fact administered was in substance that prescribed by law, and that it was consciously taken by the accused when he testified as a witness. Generally, the form of oath administered to a witness is immaterial; and that it was a lawful oath may sufficiently appear without setting out the oath in full.

There are some specific exceptions, such as the form of oath prescribed before the grand jury, which vary slightly from the usual form of oath prescribed for a witness upon the trial of the case. But where perjury is assigned upon testimony falsely delivered before a grand jury, it will be assumed that the lawful oath charged by the indictment to have been administered was that prescribed to be administered to witnesses before the grand jury; and if, upon the trial, it appears that the required oath was not administered, the defendant will be entitled to the advantage to be derived from a variance between the allegations and the proof. We hardly think, however, that the indictment would be demurrable, if it be alleged that the witness was sworn before the grand jury, and that the oath administered to him was a lawful oath. And so, in this case, it being stated in the indictment that the accused appeared as a witness on a certain day, in a case in the municipal court of Kingston, in the trial of one accused of a violation of a city ordinance, and that a lawful oath was administered to him as such witness, it is easily to be understood that the charge of the indictment upon this part of the case is that a form of oath legally suitable to the nature of the investigation then pending was administered to him;

in other words, that he swore to tell the truth in the case actually on trial, and which he understood to be on trial. As to all matters material to the issue with reference to which he testified, the solemn assumption of an obligation to speak the truth, consciously assumed by the witness in the pending investigation, is more important than the form of the words in which the oath is administered to him. It would seem to us that if the witness had sworn that his testimony in this case would be the truth, the whole truth, and nothing but the truth, the oath administered to him would have been a lawful oath. Clark's Cr. L. 385; Whart. Cr. L. 1287; Bish. Cr. Pr. §§ 902, 912, par. 2.

2. The third ground of the demurrer challenges the authority of Griffin (who is alleged to have administered it) to administer, as one of the board of commissioners of the Town of Kingston and as president of the board, the oath alleged; and in the eighth ground it is insisted that the board of commissioners of the Town of Kingston were not a court, and had no jurisdiction as a court, nor any authority to summon, swear, or hear witnesses. In the original charter granted to the Town of Kingston (Acts 1869, p. 81) the board of commissioners were given power to pass such rules and ordinances for the good government and order of said town, the collection of town taxes, the punishment of disorderly conduct, the preservation of peace and quiet, and the protection of the citizens of, and persons visiting, said town as they might think necessary and proper, and to assess fines, in their discretion, not exceeding $100, for the violation of any of their rules or ordinances; but there was no express grant of power to try the offenders. By the act of 1895, section 2 (Acts 1895, p. 242), the charter was amended, and it was provided that "any person or persons violating any of the laws or ordinances of said town shall be tried therefor by said board of commissioners, and on conviction thereof" shall be punished as prescribed in this section. An act of the General Assembly conferring power upon the municipal authorities to try all violators of the ordinances of the town, and to sentence those adjudged to be guilty, and to fine them, imprison them, or compel them to work in a chain-gang upon the public streets, creates, by charter, a court. *Swafford* v. *Berrong*, 84 *Ga.* 65 (10 S. E. 593). "Every court has power . . to administer oaths in an action or proceeding pending therein, and in all other cases, when it may be necessary, in

the exercise of its powers and duties." Civil Code (1910), § 4644 (5).

3-5. The rulings stated in the third, fourth, and fifth headnotes require no elaboration. It is only necessary to say, in explanation of the fifth headnote, that the ordinance, for a violation of which Charles Davenport was being tried in the municipal court, was one forbidding any person to be drunk or disorderly on the streets of the Town of Kingston, and it is alleged that the accused, as a witness, swore on the trial of Davenport that the latter "was not drunk on the day and date aforesaid, and that he had been with Charles Davenport from one o'clock to about 4.30 o'clock p. m., and that Charles Davenport had not drunk a drop." Clearly this testimony was material to the issue before the court. As to the matter of date, nothing can be said except that the indictment alleges distinctly that the day on which the perjury was committed, and the day with relation to which the witness testified, were the same day. As such a state of facts is not impossible, the demurrer fails to present any point for consideration. If upon the trial it should appear that the day with reference to which the defendant testified was a different day from the one on which Davenport was accused of being drunk, even then, perhaps, no question would be presented, for the State is not compelled to prove that the perjury was committed on the exact date alleged in the presentment.

6. There was no error in overruling the demurrer.

*Judgment affirmed.*